**Hayden G. McQUEEN, Appellant,**

v.

**Togo D. WEST, Jr. Secretary of Veterans Affairs, Appellee.**

No. 96–403.

United States Court of Appeals for Veterans Claims.

Argued Nov. 17, 1999.

Decided Dec. 16, 1999.

Michael P. Horan for the appellant.

Edward V. Cassidy, Jr., with whom Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; and Michael A. Leonard, Deputy Assistant General Counsel, were on the brief, for the appellee.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran Hayden G. McQueen, appeals through counsel an April 8, 1996, Board of Veterans' Appeals (BVA or Board) decision that (1) denied Department of Veterans Affairs (VA) service connection for a low-back disorder, carcinoma in situ of the bladder (bladder cancer), and impotence, all claimed as secondary to service-connected kidney stones or treatment therefor, and (2) awarded an increased rating, to 20%, for service-connected kidney stones. Record (R.) at 10. The appellant has filed a brief and a reply brief, and the Secretary has filed a brief, and both parties have each filed several notices of supplemental authority. *See* U.S. VET.APP. R. 28(g). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm the BVA decision.

## I. Background

The veteran served in the U.S. Air Force from July 1961 to January 1965. R. at 76. His separation medical examination report noted: "History of [r]enal [c]alculus, bilateral." R. at 71. (Renal calculi are kidney stones. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 247 (28th ed.1994).) In July 1965, a VA regional office (RO) awarded service connection for kidney stones, rated 10% disabling, effective January 1965. R. at 86.

In August 1990, the veteran underwent a VA examination based on his complaints of having low-back pain; x-rays produced an impression of "[o]steopenia with sacralization of L5 and spondylolytic defect at L5–S1." R. at 308. In July 1991, he filed with the VARO a claim for service connection for low-back pain and impotence, both as secondary to kidney stones. R. at 350. In May 1992, he submitted, through his service representative, 80 pages of VA medical records dated in the 1990s that described, inter alia, treatment for various low-back conditions. R. at 385–87, 390. A July 1992 VA spine examination found postural abnormalities and diagnosed the veteran as having "[c]hronic low[-back] pain" and "[c]hronic neck pain", both secondary to degenerative joint disease (DJD) of the lumbosacral spine. R. at 418. In the "HISTORY" section of the examination report, the examiner noted: "He is very vague as to chronology and the exact description of his pain areas and type of pain. Some of his description appears to be related to his kidney stones and perhaps bladder stones." R. at 417. The examiner also referred to an "attached [u]rology consult for evaluation of kidney stones, bladder infections and impotency", which was not in fact attached to the examination report. R. at 417. In September 1992, the RO denied secondary service connection for a low-back disability and impotence, both as

secondary to service-connected kidney stones. R. at 420. After receiving from the veteran an October 1992 NOD (R. at 425), the RO issued a Supplemental Statement of the Case (SSOC) that indicated, inter alia, that the veteran had "failed to report for an urology examination scheduled for July 10, 1992". R. at 430.

An April 1993 VA urological examination report noted that the veteran had "been evaluated by Psychology Service in particular by Dr. William Finger and it was his opinion ... that [the veteran's] impotence is psychogenic in origin." R. at 460. The VA examiner concluded "that there has been no clinical evidence throughout the entire urologic literature relating impotence to renal stone disease" and "that there is no link between renal stones disease and erectile dysfunction and impotence." *Ibid.* After receiving a July 1993 SSOC (R. at 479), the veteran filed an August 1993 Substantive Appeal in which he denied that the April 1993 examination had taken place and claimed that his "impotence is from the numerous x-rays of kidney stones since 1961." R. at 485.

The veteran's service representative then requested in October 1993 that VA provide "[a] radiology consult to determine the relationship of numerous x-rays to the veteran's claim for impotency" and a "GU consult to determine the residuals of the veteran's service-connected renal calculi to include genitourinary infections and prostate inflammation and/or cancer." R. at 487. The RO requested those consults (R. at 500), and a VA urologist examined the veteran in October 1994, assessed his various disabilities, and opined: "As far as his erectile dysfunction ... there is no connection of erectile dysfunction to renal calculus disease or to my knowledge any connection of erectile dysfunction to ... bladder [cancer]." R. at 502. The following month, the Chief of the Department of Radiology at the VA Medical Center in Indianapolis, Indiana, reviewed the veteran's claims file and opined: "The level of radiation exposure that is required to

cause impotence is many thousands of times larger than the doses [that the veteran] has received [from x-rays]." R. at 620. In January 1995, the RO denied secondary service connection for impotence, genitourinary infections, prostate inflammation, and/or cancer, and determined that the criteria for an increased rating above 10% for residuals of kidney stones were not met. R. at 623.

In the April 1996, BVA decision here on appeal, the Board denied as not well grounded the veteran's low-back-disorder, bladder-cancer, and impotence claims, and increased to 20% the veteran's rating for residuals of service-connected kidney stones. R. at 9.

## II. Analysis

### A. Increased–Rating Claim

The appellant presented in his brief to this Court no arguments regarding the 20% rating assigned by the Board, and at oral argument stated through counsel that the issues on appeal were his three claims for secondary service connection. Hence, the Court considers the increased-rating claim to be abandoned on appeal. *See Jones (James) v. West,* 12 Vet.App. 460, 463 (1999) (citing, inter alia, *Degmetich v. Brown,* 8 Vet.App. 208, 209 (1995), *aff'd,* 104 F.3d 1328 (Fed.Cir.1997)).

### B. Secondary–Service–Connection and Aggravation Theories

 Service connection for VA disability compensation purposes will be awarded to a veteran who served on active duty during a period of war, or during a post–1946 peacetime period, for, inter alia, any disease or injury that was incurred in or aggravated by a veteran's active service. *See* 38 U.S.C. §§ 1110, 1131. Secondary service connection shall be awarded when a disability "is proximately due to or the result of a service-connected disease or injury". 38 C.F.R. § 3.310(a) (1998). In addition, in *Allen v. Brown,* the Court held that "pursuant to [38 U.S.C. ] § 1110 and [38 C.F.R. ] § 3.310(a), when aggravation of a veteran's non-service-connected

condition is proximately due to or the result of a service-connected condition, such veteran shall be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation." *Allen,* 7 Vet.App. 439, 448 (1995) (en banc); *see also Libertine v. Brown,* 9 Vet.App. 521, 522 (1996). A claim for secondary service connection, must, as must all claims, be well grounded. 38 U.S.C. § 5107(a); *see Jones (Wayne) v. Brown,* 7 Vet.App. 134, 137–38 (1994). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). For a service-connection claim (here under 38 U.S.C. § 1131) to be well grounded, there generally must be (1) medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service injury or disease and the current disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *see also Elkins v. West,* 12 Vet.App. 209, 213 (1999) (en banc) (citing *Caluza, supra,* and *Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *cert. denied sub nom. Epps v. West,* 524 U.S. 940, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998) (mem.)). The credibility of the evidence presented in support of a claim is generally presumed when determining whether it is well grounded. *See Elkins,* 12 Vet.App. at 219 (citing *Robinette v. Brown,* 8 Vet. App. 69, 75–76 (1995)). The determination whether a claim is well grounded is subject to de novo review by this Court. *See Robinette,* 8 Vet.App. at 74.

At oral argument, the appellant conceded that the evidence of record is not sufficient to well ground his claim that his service-connected kidney stones *caused* his impotence or bladder cancer, and he also has made no such argument in his pleadings before this Court. Hence, the Court considers him to have abandoned on appeal any such arguments. *See Green (Doris) v. Brown,* 10 Vet.App. 111, 114 (1997); *see also Jones (James)* and *Degmetich,* both *supra.*

■ As to the veteran's low-back-disorder claim, the July 1992 VA spine examination report noted: "He is very vague as to chronology and the exact description of his pain areas and type of pain. Some of his description appears to be related to his kidney stones and perhaps bladder stones." R. at 417. However, this statement appears in the "HISTORY" section of his report and appears to have been a reiteration of the veteran's reported history of his back pain. *See, e.g., LeShore v. Brown,* 8 Vet.App. 406, 409 (1995) ("Evidence which is simply information recorded by a medical examiner, unenhanced by any additional medical comment by that examiner, does not constitute 'competent medical evidence.' "). More important, at the end of the report under "DIAGNOSIS", the examiner expressly diagnosed: "Chronic low[-back] pain secondary to [DJD], lumbosacral spine". R. at 418. Therefore, when read as a whole, the examination report unambiguously indicated that the veteran's back pain was due to DJD, and the examiner made no findings to support an assertion that the veteran's kidney stones caused or contributed to his low-back pain. *See* R. at 417–18; *Lee (Alvis) v. Brown,* 10 Vet.App. 336, 339 (1997) ("in determining well groundedness, an etiological opinion should be viewed in its full context, and not characterized solely by the medical professional's choice of words"); *cf. Gregory v. Brown,* 8 Vet. App. 563, 569 (1996) ("assuming" well-groundedness of claim when presented with ambiguous evidence of medical nexus) (citing *Grivois v. Brown,* 6 Vet.App. 136, 140 (1994)). Hence, the Court holds, on de novo review, that the veteran's low-back

secondary-service-connection claim is not well grounded. *See* 38 C.F.R. § 3.310(a); *Epps, Elkins, Libertine, Caluza, Allen,* and *Jones (Wayne),* all *supra.*

The appellant advances a theory under *Allen, supra,* that his service-connected kidney stones have aggravated his low-back disability, bladder cancer, and impotence. In this regard, the *Allen* opinion established that VA medical examinations used for purposes of evaluating an *Allen*-secondary-service-connection claim must consider both onset as well as aggravation theories of increased disability. *Allen,* 7 Vet.App. at 449–50. In support of his *Allen* theory, the appellant cites, inter alia, to an April 1995 Memorandum from the Director of VA's Compensation and Pension Service (April 1995 Memorandum) and to VA ADJUDICATION PROCEDURE MANUAL, M21–1, Part VI, para. 7.62 (MANUAL M21–1) (Oct. 11,.1995), both of which were prepared in response to the Court's opinion in *Allen* and were issued while this case was on appeal to the Board. He argues that, under *Karnas v. Derwinski,* the BVA was required to remand the claims to the RO for the application of the adjudication procedures adopted in those VA issuances and thus for the provision of "a medical examination, including review of the claims folder" for the purpose of "establish[ing] the baseline level of non[-]service-connected disability and the level of additional disability which is considered proximately due to the service-connected disability". MANUAL M21–1, Part VI, para. 7.62; *see also Karnas,* 1 Vet.App. 308, 313 (1991) ("where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so").

We will assume, arguendo, without deciding, that the Manual M21–1 provision and April 1995 Memorandum are applicable to a claim that is not well grounded. *But see Morton v. West,* 12 Vet.App. 477, 486 (1999) (concluding that "under [38 U.S.C. § ]5107, absent the submission and establishment of a well-grounded claim, the Secretary cannot undertake to assist a veteran in developing facts pertinent to his or her claim" and that any Manual M21–1 provision in conflict with section 5107 is void); *cf.* Appellant's Notice of Supplemental Authorities (Oct. 12, 1999), at 2 (*"Morton* may nullify some of the arguments that Mr. McQueen presented to the Court concerning the [April 1995 Memorandum and Manual M21–1 provisions]"). Nonetheless, at bottom, what the appellant seeks is a remand for a VA medical examination that addresses the aggravation theory for secondary service connection recognized by this Court in *Allen, supra.* In this regard, the BVA decision on appeal did determine that, based on its review of the evidence, an *Allen* theory of secondary service connection had not been shown by that evidence. Moreover, the Court has reviewed the record on appeal (ROA) and, for the following reasons, concludes that the appellant has received adequate VA examinations to address an *Allen* secondary-service-connection theory for each of his asserted conditions.

At the outset, the Court notes that the RO provided to the veteran—at his own request (R. at 487, 500)—several VA medical examinations concerning whether there is a relationship between his service-connected kidney stones, including the x-rays taken in connection with VA treatment of that condition, and his asserted secondary disabilities. As to the impotence claim, a VA examiner opined in April 1993 "that there has been no clinical evidence throughout the entire urologic literature relating impotence to renal stone disease". R. at 460; *see also* R. at 502 (October 1994 examination affirming that April 1993 finding). As to the veteran's assertion that his impotence was caused by x-rays taken during VA's evaluation and treatment of his kidney stones, a VA radiologist opined in

November 1994: "The level of radiation exposure that is required to cause impotence is many thousands of times larger than the doses [that the veteran] has received." R. at 620; *cf. also* R. at 460 (April 1993 VA opinion that veteran's "impotence is psychogenic in origin"). Regarding his bladder-cancer claim, an October 1994 VA examination was undertaken specifically to address any relationship of that condition to his service-connected kidney stones, and nothing in that examination report indicated that the veteran's cancer had been caused or aggravated by the kidney stones. *See* R. at 502.

· Thus, the veteran has received medical opinions from VA regarding whether his current non-service-connected impotence and bladder cancer have been aggravated by his service-connected kidney stones. The Court notes that these opinions are consistent with *Allen* because they indicate not only that there was "no etiological relationship between the veteran's service-connected [condition] and the **subsequent onset** [of the non-service-connected condition]", *Allen,* 7 Vet.App. at 449 (emphasis added), but also that there was no relationship **at all** between the conditions. As to the requirements set forth in the VA issuances cited by the appellant, the medical opinions were made concurrent with a review of his claims file and there is no indication—and the appellant does not assert—that all available medical records had not been obtained prior to the rendering of these opinions. Based on their review of the veteran's current conditions, none of the VA examining physicians found any "level of additional disability which is considered proximately due to the service-connected disability". MANUAL M21–1, Part VI, para. 7.62; *see also* April 1995 Memorandum (containing similar language). Hence, there would be no prejudice had the examiner not assessed the baseline level of the veteran's disabilities. *See* 38 U.S.C. § 7261(b) (Court shall take due account of rule of prejudicial error); *Edenfield v. Brown,* 8 Vet.App. 384, 390–91 (1995) (en banc). Nonetheless, the Oc-

tober 1994 examination report does appear to have assessed essentially the baseline level of the veteran's impotence and bladder-cancer disabilities. R. at 502.

As to the veteran's back-disorder claim under the *Allen* secondary-service-connection theory, the Court determined above that the July 1992 VA examination report contained an unambiguous medical opinion that the veteran's back pain was due to his having DJD of the lumbosacral spine and not to his kidney stones. R. at 417–18. The VA examiner reviewed the evidence in the veteran's claims file, assessed in detail the level of the veteran's back disability, and because the examiner determined that the back disability was due to DJD, he necessarily concluded that the veteran's kidney stones had not increased his low-back pain above its baseline level or caused any additional low-back disability. *See* MANUAL, M21–1, Part VI, para. 7.62; April 1995 Memorandum. Hence, as to each of his asserted claims the veteran has received de facto compliance with the April 1995 Memorandum and the Manual M21–1 provisions that he cites, even assuming (without deciding) that those VA issuances have applicability in this case where the claims are not well grounded.

### C. Reexamination of 38 U.S.C. § 5107(a)

The appellant asks the Court to reconsider the interpretation—set forth in *Epps v. Gober,* 126 F.3d 1464—of the well-groundedness requirement contained in 38 U.S.C. § 5107(a), in the event that the Court were to conclude—as we do—that his claims are not well grounded. However, this Court recently convened en banc and declined such an invitation in a case where the appellant had been represented by the same attorney who argued the instant case. Indeed, at oral argument counsel conceded that at least some of the "new evidence" of VA practice prior to enactment of the Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C.

§ 7251 note), cited in his brief in this case had already been presented to the full Court in *Schroeder v. West*, 12 Vet.App. 184 (1999) (en banc per curiam order) (denying motion for initial decision by full Court on issue whether section 5107(a) duty to assist attaches prior to submission of well-grounded claim and noting that *Epps* "is binding on this Court"). This panel is bound by the opinion of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) and by this Court's en banc order in *Schroeder* and, therefore, must reject the appellant's section 5107(a)-based arguments. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (noting that decisions of the Federal Circuit are binding on this Court and that "a panel . . . may not render a decision which conflicts materially with [an] . . . en banc opinion. It is in this way we assure consistency of our decisions.").

### D. Appellant's Motion to Strike and Request for Full Court Decision

The appellant moves to strike the Secretary's citation on page 12 of his brief to a single-judge memorandum decision of this Court. Appellant's Reply at 7. The Secretary states that his citation to that nonprecedential decision is not as a legal "precedent, but simply for attribution" (Secretary's Brief at 12); however, Rule 28(i) of this Court's Rules of Practice and Procedure prohibits such a citation unless it is for the "binding or preclusive effect of that action" and that is not the purpose of the citation in question. Accordingly, the Court will grant the appellant's motion. *See* U.S. Vet.App. R. 28(i). As to the appellant's request for a full Court decision, Brief at 25 (requesting that, if remand is not granted, "the Court convene en banc to reconsider the interpretation it has given to 38 U.S.C. § 5107"), the inclusion of such a request as part of a brief is not contemplated by Rule 35 of this Court's

Rules of Practice and Procedure, and the Court is not inclined to cut short the established process. Hence, because the appellant's motion is not in accordance with the application process, that motion will not be forwarded to the full Court for consideration.

### III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings and oral arguments, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, process, or articulation of reasons or bases—that would warrant reversal or remand under 38 U.S.C. §§ 1131, 5107(a), 7104(a) or (d)(1), or 7261, or 38 C.F.R. § 3.310(a). Therefore, the Court affirms the April 8, 1996, BVA decision.

AFFIRMED.