**Gerald BOYER, Claimant–Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Respondent–Appellee.**

**No. 99–7079.**

United States Court of Appeals, Federal Circuit.

April 10, 2000

Michael E. Wildhaber, The Law Offices of Wildhaber & Associates, of Washington, DC, argued for claimant-appellant. With him on the brief was Daniel D. Wedemeyer.

Laureen D. Kapin, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were David W. Ogden, Acting Assistant Attorney General; David M. Cohen; Director; Anthony H. Anikeeff, Assistant Director; and Gerald M. Alexander, Attorney. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel, and Martie Adelman, Attorney, Department of Veterans Affairs, of Washington, DC.

Before RADER, CLEVENGER, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

Gerald Boyer appeals from the October 8, 1998 and January 27, 1999 decisions of the United States Court of Appeals for Veterans Claims (the "CAVC")[1] denying his claim for a compensable rating evaluation for service-connected left-ear hearing loss.[2] Because we find that 38 U.S.C. § 1160(a)(3) (1994) plainly speaks to the issue and precludes any consideration of Mr. Boyer's right-ear hearing loss for the purposes of evaluating his service-connected hearing loss in his left ear, we affirm.

I.

Boyer served on active duty in the infantry of the United States Army from October 10, 1967 to December 11, 1969. Almost 25 years after his discharge, Boyer

---

1. On March 1, 1999, the name of the United States Court of Veterans Appeals was changed to the United States Court of Appeals for Veterans Claims pursuant to the enactment of the Veterans Programs Enhancement Act of 1998, Pub.L. No. 105–368, § 511, 112 Stat. 3315, 3341. We refer throughout this opinion to the court by its new name although at the time of the proceedings and decisions here reviewed, it was not yet so named.

2. In the January 27, 1999 decision, the CAVC granted Mr. Boyer's motion for reconsideration of the October 8, 1998 decision, but held that the October 8 decision was valid and controlling. In both the October 8 and January 27 decisions, the CAVC also denied Mr. Boyer's claim for service connection for his right-ear hearing loss. We need not consider this denial, however, as Mr. Boyer does not appeal that aspect of the CAVC's decisions.

applied to the Department of Veterans Affairs (the "Agency") for service connection for hearing loss in both ears. On March 23, 1995, the Regional Office (the "RO") for the Agency granted Boyer service connection for the hearing loss in his left ear. The RO denied Boyer service connection, however, for the hearing loss in his right ear. The RO determined that Boyer had not established that any hearing loss in his right ear existed at the time he was discharged. As for Boyer's left-ear hearing loss, the RO rated the loss as zero-percent disabling.[3]

Boyer appealed the RO's decision to the Board of Veterans Appeals (the "Board"). After considering Boyer's testimony that he was exposed to high noise levels in both ears during his military service, the Board affirmed the RO's decision. The Board first determined that Boyer had not offered any competent medical evidence to support his claim for service connection for his hearing loss in his right ear. The Board then agreed with the RO that under 38 C.F.R. § 3.383 (1988) and its enabling statute, 38 U.S.C. § 1160(a)(3), Boyer's right-ear hearing loss could not be considered in rating his service-connected left-ear hearing loss, because the right-ear loss was less than total. Instead, the Board concluded that, for the purposes of evaluating the left-ear hearing loss, Boyer's right-ear hearing must be considered normal. As a result, the Board determined, Boyer was not entitled to a compensable rating for his left-ear loss.

Boyer appealed the Board's decision to the CAVC. On October 8, 1998, the CAVC affirmed. The CAVC initially agreed that Boyer's claim for service connection for the right-ear loss was not well-grounded, based on the evidence presented in the record. Relying on 38 U.S.C. § 1160(a) and 38 C.F.R. § 4.85, the CAVC then affirmed the Board's decision on Boyer's claim for a compensable rating for his service-connected left-ear hearing loss.

The court noted that although the Agency general counsel's opinion relied upon by the government had not issued at the time of its decision, the Board's conclusions were nevertheless reasonable and entitled to deference. On January 27, 1999, the court granted Boyer's motion for reconsideration, but again affirmed the Board's decision. After the CAVC entered its judgment, Boyer filed a timely appeal with this court.

## II.

### A.

This court has limited jurisdiction in reviewing the decisions of the CAVC. Our authority is limited to deciding all relevant questions of law, including matters of statutory interpretation. *See* 38 U.S.C. § 7292(d)(1). We can set aside a regulation or interpretation of a regulation relied upon by the CAVC that we find to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitation, or in violation of a statutory right; or (D) without observance of procedure required by law." *Id.* In general, however, this court may not review factual determinations or the application of a specific set of facts to a law or regulation. *See* 38 U.S.C. § 7292(d)(2); *Anglin v. West*, 203 F.3d 1343, 1345 (Fed.Cir.2000).

### B.

 As this court noted in *Maggitt v. West*, 202 F.3d 1370, 1375 (Fed.Cir.2000), a veteran seeking disability benefits must establish: (1) status as a veteran; (2) the existence of a disability; (3) a connection between the veteran's service and the disability; (4) the degree of the disability; and (5) the effective date of his disability. "Disagreement between the Agency and

---

**3.** The Agency has the authority to establish a rating schedule that includes ten grades of disability, ranging from 10 percent to 100 percent, as well a grade of zero percent disability. *See* 38 U.S.C § 1155.

the veteran about one or more of these elements may create a dispute which is resolved by an Agency decision as to whether the veteran does or does not have legal entitlement to a particular benefit." *Id.* (citing *Collaro v. West*, 136 F.3d 1304, 1308 (Fed.Cir.1998)). If not satisfied, the veteran may appeal the Agency decision, first to the Board and then to CAVC. *See id.*

■ Boyer's dispute with the Agency concerns the fourth element of his application, the degree of his disability. Boyer argues that the Agency's rating schedule for hearing loss promulgated under 38 U.S.C. § 1155 improperly treats Boyer's right-ear hearing as normal for the purposes of evaluating his service-connected left-ear hearing loss. Based on this treatment, the Agency determined that Boyer's left-ear hearing loss was zero-percent disabling. Boyer also challenges the Agency's interpretation of 38 U.S.C. § 1110, which provides that "[f]or disability resulting from personal injury suffered ... in line of duty, ... in the active military ... service ... the United States will pay to any veteran thus disabled ... compensation as provided in this subchapter."

According to Boyer, Congress left the term "disability" in these statutes without a clear definition or meaning, and the term is similarly undefined in the Agency's regulations and rating schedules concerning disability compensation. In this absence of a definition in either the statutes or the regulations, Boyer contends, the definition announced by the CAVC in *Allen v. Brown*, 7 Vet.App. 439 (1995) (en banc) controls. In *Allen*, the CAVC held that

the term "disability" as used in [section] 1110 refers to impairment of earning capacity, and that such definition mandates that any additional impairment of earning capacity resulting from already service-connected condition, regardless of whether or not the additional impairment is itself a separate disease or inju-

ry caused by the service-connected condition, shall be compensated.

*Id.* at 448.

Under this definition, Boyer concludes, the Agency committed a clear error of law. Boyer argues the error as follows. Hearing is inherently a bilateral ability; one's relative ability to hear in each ear affects one's overall ability to hear. Thus, a veteran's overall impairment of earning capacity from service-connected hearing loss in one ear is necessarily affected by any hearing loss in the other ear, even if the loss is less than total and not service-connected. By limiting its consideration of hearing loss in the other ear to total loss if the loss is not service-connected, the Agency failed to satisfy its duty to compensate veterans for impairment of earning capacity. In sum, the Agency should have considered his right-ear hearing loss when evaluating his rating for his left-ear loss, and erred when it treated his right-ear hearing as normal because Boyer had failed to establish that the right-ear loss was service-connected.

Boyer recognizes, correctly so, that this court must generally defer to an agency's reasonable interpretations of an ambiguous statute under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Nevertheless, Boyer argues that the agency must interpret any ambiguity in the statute in the veteran's favor. *See Allen*, 7 Vet.App. at 439; *McKnight v. Gober*, 131 F.3d 1483, 1485 (Fed.Cir.1997). Because the Agency's interpretation of the relevant statutes is less favorable to the veteran than the alternative the veteran proposes, Boyer asserts, this court must conclude that the Agency's interpretation is invalid.

Boyer argues one further point. Some time after the CAVC issued its decision in this case, the Agency promulgated a new regulation, to be codified at 38 C.F.R. § 4.85(f). Boyer asserts that the regulation "is nothing more than the Secretary's tardy attempt to codify his previously un-

written policy." As a result, Boyer concludes, if the court determines that the Agency's decision, based on the Agency general counsel's opinion, is contrary to law, it should also hold that section 4.85(f) is also contrary to law.

█ We must respectfully disagree. As an initial matter, we certainly agree with Boyer that when we find an ambiguity in a veterans' benefit statute, " 'interpretative doubt is to be resolved in the veteran's favor.' " *McKnight*, 131 F.3d at 1485 (quoting *Brown v. Gardner*, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)). At the same time, we have also recognized that a veteran "cannot rely upon the generous spirit that suffuses the law generally to override the clear meaning of a particular provision." *Smith v. Brown*, 35 F.3d 1516, 1526 (Fed.Cir.1994). As to the merits of this case, the issue before the court is relatively straightforward: did the Agency err when it refused to consider Boyer's non-service-connected right-ear hearing loss in evaluating his service-connected left-ear hearing loss? In *Delverde, SrL v. United States*, 202 F.3d 1360 (Fed. Cir.2000), this court reiterated the principles that govern our review of an agency's interpretation of a statute that it is charged with administering.

> We must first carefully investigate the matter to determine whether Congress's purpose and intent on the question at issue is judicially ascertainable. We do so by employing the traditional tools of statutory construction; we examine the statute's text, structure, and legislative history, and apply the relevant canons of interpretation. If we ascertain[ ] that Congress had an intention on the precise question at issue, that intention is the law and must be given effect, and the only issue is whether the agency acted in accordance with that intent.

*Id.* at 1363 (citing *Chevron*, 467 U.S. at 842–43 & n. 9, 104 S.Ct. 2778; *Timex V.I., Inc. v. United States*, 157 F.3d 879, 881–82 (Fed.Cir.1998); *LTV Steel Co. v. United States*, 174 F.3d 1359, 1363 (Fed.Cir.1999)) (internal quotation marks omitted).

In this case, we must acknowledge the clear intention expressed by Congress on the issue presented in 38 U.S.C. § 1160(a). This statute provides, in pertinent part, that

> (a) Where a veteran has suffered—
>
> (3) total deafness in one ear as a result of service-connected disability and total deafness in the other ear as the result of non-service-connected disability not the result of the veteran's own willful misconduct;
>
> the Secretary shall assign and pay to the veteran the applicable rate of compensation under this chapter as if the combination of disabilities were the result of service-connected disability.

38 U.S.C. § 1160. Thus, Congress explicitly declared that when a non-service-connected hearing loss in one ear is total, it must be considered by the Agency when evaluating a service-connected total hearing loss in the other ear. Boyer asserts that this declaration, by speaking directly to the impact of total non-service-connected hearing loss on the evaluation of service-connected loss, renders ambiguous Congress' intent on the issue of less than total non-service-connected loss.

This assertion, however, ignores the remaining provisions of section 1160, which is directly generally to "[s]pecial consideration for certain cases of loss of paired organs or extremities." 38 U.S.C. § 1160. In addition to hearing loss in both ears, addressed in subsection 1160(a)(3), the section considers disabilities suffered in both ears, kidneys, hands, feet, and lungs:

> (a) Where a veteran has suffered—
>
> (1) blindness in one eye as a result of service-connected disability and blindness in the other eye as a result of non-service-connected disability not the result of the veteran's own willful misconduct;
>
> (2) the loss or loss of use of one kidney as a result of service-connected disability and involvement of the other kidney as a result of non-service-connected dis-

ability not the result of the veteran's own willful misconduct;

. . .

(4) the loss or loss of use of one hand or one foot as a result of service-connected disability and the loss or loss of use of the other hand or foot as a result of non-service-connected disability not the result of the veteran's own willful misconduct; or

(5) permanent service-connected disability of one lung, rated 50 percent or more disabling, in combination with a non-service-connected disability of the other lung that is not the result of the veteran's own willful misconduct, the Secretary shall assign and pay to the veteran the applicable rate of compensation under this chapter as if the combination of disabilities were the result of service-connected disability.

38 U.S.C. § 1160. Significantly, in describing the level of disability in the non-service-connected organ of each of these other pairs, Congress specifically refrains from describing the disability as "total," as it did with hearing under subsection 1160(a)(3).

For example, when discussing loss of sight, Congress refers to "blindness," not "total blindness." Similarly, when discussing renal failure, Congress speaks of "loss of the use" of one kidney, not "total loss of use." If Congress had similarly intended to permit consideration of partial non-service-connected loss of function with respect to hearing, it surely would have done so with an explicit provision akin to these other subsections. *Cf. Seltzer v. Office of Personnel Mgmt.*, 833 F.2d 975, 977 (Fed. Cir.1987) ("Indeed, the existence of an explicit provision, providing additional civil service credit for unused sick leave that accrued concurrently with calendar year credit, suggest that if Congress had intended to permit double credit in petitioner's situation, it would have done so explicitly with a similar provision.") (citing 2A Singer, *Sutherland Statutory Construction*, § 47.23 (4th ed.1984)). From this, we can reasonably conclude that Congress knew what legislative action it was under-taking, and that it intended that hearing loss be treated different than other loss of paired organ function. *See Field v. Mans*, 516 U.S. 59, 66, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.") (citations omitted).

This court can only interpret the statutes that are enacted by the Congress. Any changes that parties may seek in order to eliminate a statutory incongruity should be brought to the attention of Congress. We are simply powerless to amend any statutory provision *sua sponte*.

The government further characterizes subsection 1160(a)(3) as a "limited exception to the general rule" set forth in section 1110 that limits compensation to disabilities that are service-connected. Whether this is true is a question that we need not reach in order to resolve this case, and so we leave it for another day. What is true, however, is that Congress has clearly elected to treat partial hearing loss differently than partial function loss in other paired organ systems when the loss is non-service-connected. Whatever the propriety of that difference, we must conclude that it is accurately reflected in the Agency's evaluation of Boyer's claim. Accordingly, we conclude that the Agency properly refused to consider Boyer's partial non-service-connected hearing loss in his right ear when it evaluated the service-connected hearing loss in his left ear.

This conclusion, however, should not be construed as expression of any opinion on the validity of 38 C.F.R. § 4.85(f). This court's jurisdiction does not extend so far as to allow us to consider the validity or interpretation of a regulation that was not relied upon by the CAVC in making its decision. *See* 38 U.S.C. § 7292(a); *Epps v. Gober*, 126 F.3d 1464, 1469–70 (Fed.Cir. 1997). In this case, the regulation at issue was not even in effect at the time of the

CAVC decision. Under these circumstances, we must refrain from assessing the section's validity.

The decision of the CAVC is

*AFFIRMED.*

No costs.