Citation Nr: 1214062 
Decision Date: 04/17/12 Archive Date: 04/27/12

DOCKET NO. 09-05 328 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for tinnitus, to include as secondary to bilateral hearing loss.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

Paul S. Rubin, Counsel



INTRODUCTION

The Veteran served on active duty from December 1965 to June 1967 with the U.S. Navy. The Veteran also served in the Army Reserve and in the Wyoming and Missouri Army National Guard from 1960 to 1990, during which time he had various periods of active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA).

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a June 2008 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. 

A review of the Virtual VA paperless claims processing system does not reveal any additional documents pertinent to the present appeal. 

The Board remanded this case in November 2010 for further development. After completion of this development by the RO, the case has been returned to the Board for further appellate consideration.


FINDINGS OF FACT

1. The Veteran has current bilateral ear hearing loss disability for VA compensation purposes, as well as tinnitus. 

2. There is probative medical nexus evidence showing the Veteran's current bilateral hearing loss disability is the result of acoustic trauma sustained during his active service in the Navy and during periods of ACDUTRA and INACDUTRA in the Army Reserve and National Guard. 

3. Probative medical evidence of record demonstrates that the Veteran's tinnitus is the result of service-connected bilateral hearing loss disability.


CONCLUSIONS OF LAW

1. Resolving all reasonable doubt in his favor, the Veteran has bilateral hearing loss that was incurred in active military service. 38 U.S.C.A. §§ 101, 1110, 1131, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.1, 3.6, 3.102, 3.159, 3.303, 3.385 (2011).

2. Resolving all reasonable doubt in his favor, the Veteran has tinnitus that is the result of his bilateral hearing loss. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

In this decision, the Board will discuss the relevant law it is required to apply. This includes statutes enacted by Congress and published in Title 38, United States Code ("38 U.S.C.A."); regulations promulgated by VA under the law and published in the Title 38 of the Code of Federal Regulations ("38 C.F.R."); and the precedential rulings of the Court of Appeals for the Federal Circuit (as noted by citations to "Fed. Cir.") and the Court of Appeals for Veterans Claims (as noted by citations to "Vet. App.").

The Board is bound by statute to set forth specifically the issue under appellate consideration and its decision must also include separately stated findings of fact and conclusions of law on all material issues of fact and law presented on the record, and the reasons or bases for those findings and conclusions. 38 U.S.C.A. § 7104(d); see also 38 C.F.R. § 19.7 (implementing the cited statute); Vargas-Gonzalez v. West, 12 Vet. App. 321, 328 (1999); Gilbert v. Derwinski, 1 Vet. App. 49, 56-57 (1990) (Board's statement of reasons and bases for its findings and conclusions on all material facts and law presented on the record must be sufficient to enable the claimant to understand the precise basis for the Board's decision, as well as to facilitate review of the decision by courts of competent appellate jurisdiction; the Board must also consider and discuss all applicable statutory and regulatory law, as well as the controlling decisions of the appellate courts).

VA's Duty to Notify and Assist

Review of the claims folder reveals compliance with the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2011). In any event, if any defect in VCAA notice or assistance is found, such defect is not prejudicial to the Veteran, given the completely favorable disposition of the claims at issue. Bernard v. Brown, 4 Vet. App. 384, 392-94 (1993). 


The Merits of the Service Connection Claims for Bilateral Hearing Loss and Tinnitus

The Veteran contends that he developed bilateral hearing loss and tinnitus as the result of acoustic trauma during service. Specifically, he alleges that he was exposed to hazardous noise exposure as the result of his military occupational specialty (MOS) as a deckhand in the Navy from 1965 to 1967. His DD Form 214 confirms he served in this capacity. He reported that as a deckhand he worked with loud machinery such as jackhammers and a deck grinder for painting and repairing the vessel he was assigned to. In addition, he asserts acoustic trauma from artillery fire during his periods of ACDUTRA and INACDUTRA with the Army Reserve and Army National Guard from 1960 to 1990. He reports he did not wear hearing protection during service. He denies any post-service noise exposure as a dental lab technician and a mail handler. See September 2007 claim; October 2007 Veteran's statement; June 2008 Notice of Disagreement (NOD); February 2009 VA Form 9; June 2010 representative statement; and September 2010 and March 2012 Informal Hearing Presentations (IHPs). 

Upon review of the evidence of record, the Board grants the appeal for service connection for bilateral hearing loss and tinnitus. There is probative medical nexus evidence from a November 2010 VA audiology examiner linking the Veteran's current bilateral hearing loss to acoustic trauma from his military service in the Navy and from his ACDUTRA / INACDUTRA periods of service. There is also probative medical evidence of record that demonstrates the Veteran's tinnitus is a symptom of his bilateral hearing loss disability.

Service connection may be granted if it is shown the Veteran develops a disability resulting from an injury sustained or disease contracted in the line of duty, or for aggravation during service of a pre-existing condition beyond its natural progression. 38 U.S.C.A. §§ 1110, 1131, 1153; 38 C.F.R. §§ 3.303, 3.306. 
 
Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004), citing Hansen v. Principi, 16 Vet. App. 110, 111 (2002). 

In the absence of proof of a current disability, there can be no valid claim. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

Disorders diagnosed after discharge may still be service connected if all the evidence, including pertinent service records, establishes the disorder was incurred in service. 38 C.F.R. § 3.303(d); Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

Service connection may be demonstrated by showing direct service incurrence or aggravation, as discussed above, or by using applicable presumptions, if available. Combee, 34 F.3d at 1043. As to presumptive service connection, some diseases are chronic, per se, such as organic diseases of the nervous system such as sensorineural hearing loss, and therefore will be presumed to have been incurred in service, although not otherwise established as such, if manifested to a degree of ten percent or more within one year after service. Even this presumption, however, is rebuttable by probative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. 

According to VA standards, impaired hearing will be considered a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of these frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

Even if no hearing loss or auditory shifts are noted in the service treatment records, the U.S. Court of Appeals for Veterans Claims (Court) has held section 3.385 does not preclude an award of service connection for a hearing disability established by post-service audiometric and speech-recognition scores, even when hearing was found to be within normal limits on audiometric and speech-recognition testing at the time of separation from service. Hensley v. Brown, 5 Vet. App. 155, 157 (1993); see also Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992).

A Veteran is "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C.A. § 101(2); 38 C.F.R. § 3.1(d). ACDUTRA is, among other things, full-time duty in the Armed Forces performed by Reserves for training purposes or by members of the National Guard of any state. 38 U.S.C.A. § 101(22); 38 C.F.R. § 3.6(c)(1). INACDUTRA is part-time duty in the Armed Forces performed by Reserves for training purposes or by members of the National Guard of any state. 38 U.S.C.A. § 101(22); 38 C.F.R. § 3.6(c)(1). 

ACDUTRA is not defined as "active" service unless the individual concerned was disabled or died from a disease or injury incurred or aggravated in the line of duty while performing ACDUTRA. 38 U.S.C.A. § 101(24); 38 C.F.R. § 3.6(a). INACDUTRA is not defined as "active" service unless the individual concerned was disabled or died from injury incurred or aggravated in the line of duty while performing INACDUTRA. 38 U.S.C.A. § 101(24); 38 C.F.R. § 3.6(a). 

When a claim for service connection is based only on a period of ACDUTRA or INACDUTRA, there must be evidence that the appellant became disabled as a result of a disease or injury incurred or aggravated in the line of duty during the period of ACDUTRA or INACDUTRA. See 38 U.S.C. §§ 101(2), (22), (24); 38 C.F.R. § 3.6(a); Acciola v. Peake, 22 Vet. App. 320, 324 (2008) (citing Mercado-Martinez v. West, 11 Vet. App. 415, 419 (1998); Paulson v. Brown, 7 Vet. App. 466, 470 (1995)). In the absence of such evidence, the period of ACDUTRA or INACDUTRA would not qualify as "active military, naval, or air service," and the appellant would not qualify as a "Veteran" by virtue of the ACDUTRA or INACDUTRA service alone. 38 U.S.C. § 101(2), (24); see Acciola, 22 Vet. App. at 324.

The claimant's service connection claims for hearing loss and tinnitus partially stem from acoustic trauma injuries (due to artillery) that allegedly occurred during periods of ACDUTRA or INACDUTRA with the Wyoming Army National Guard (in the 1960s), with the Missouri Army National Guard (in the 1970s), and with the Army Reserve (in the 1970s and 1980s). See February 2009 VA Form 9; November 2010 VA examination report. Since the claimant has not yet been awarded service connection for any disability for these particular periods of service, he is currently not defined as a "Veteran" for purposes of benefits administer by VA for these particular time periods. See 38 U.S.C. §§ 101(2), (22), (24); 38 C.F.R. § 3.6(a); Mercado-Martinez, 11 Vet. App. at 419. 

In determining whether service connection is warranted, the Board shall consider the benefit-of-the-doubt doctrine. 38 U.S.C.A. 5107(b); 38 C.F.R. § 3.102; Alemany v. Brown, 9 Vet. App. 518 (1996); Gilbert v. Derwinski, 1 Vet. App. 49 (1991). 

The first - and perhaps most fundamental requirement for any service-connection claim is the existence of a current disability. Boyer, 210 F.3d at 1353; Brammer, 3 Vet. App. at 225. A November 2010 VA audiology examination revealed bilateral sensorineural hearing loss disability according to the requirements of 38 C.F.R. § 3.385, as well as tinnitus. The November 2010 VA audiogram showed pure tone thresholds, in decibels, as follows:


HERTZ

500
1000
2000
3000
4000
RIGHT
20
25
50
55
60
LEFT
20
20
45
55
50

Speech audiometry revealed speech recognition ability of 84 percent in the right ear and 86 percent in the left ear.

However, the question remains whether this current hearing loss and tinnitus are related to acoustic trauma during the Veteran's military service, to include his periods of ACDUTRA and INACDUTRA. There is no medical evidence in his Navy STRs dated from 1965 to 1967 or any lay assertions during his Navy service of complaints, treatment, or diagnosis of hearing loss or tinnitus. Neither tinnitus nor a hearing loss disability by the standards of 38 C.F.R. § 3.385 was demonstrated during his active service with the Navy. The Veteran's hearing was normal according to several whispered-voice tests administered during his service in the Navy from 1965 to 1967. Regardless, the Veteran credibly relates that he sustained exposure to acoustic trauma from his duties as a deckhand during his Navy service.

Notably, during the Veteran's subsequent service in the Missouri Army National Guard and the Army Reserve in the 1970s and 1980s, significant auditory shifts in pure tone thresholds were documented. Moreover, Army Reserve point statements confirm that the Veteran had numerous periods of ACDUTRA and INACDUTRA training in the 1970s and 1980s, consisting of once-a-month weekend training and annual two-week trainings. During these trainings, the Veteran credibly reports he was exposed to hazardous noise exposure from artillery fire. 

Specifically, the Veteran underwent a February 1974 audiology examination with the Missouri National Guard. This audiogram showed pure tone thresholds in the right ear at frequencies of 500, 1000, 2000, and 3000 hertz of 5, 5, 5, and 5 decibels, respectively. Corresponding findings in the left ear were the same. 

The Veteran underwent a latter January 1984 audiology examination with the Army Reserve. This audiogram showed pure tone thresholds in the right ear at frequencies of 500, 1000, 2000, 3000, and 4000 hertz of 0, 5, 0, 10, and 25 decibels, respectively. Corresponding findings in the left ear were 5, 10, 5, 30, and 35 decibels. At this juncture, compared to the earlier examination, a definitive auditory shift in pure tone thresholds was evident at frequencies of 3000 and 4000 hertz. 

The Veteran underwent a September 1986 audiology examination with the Army Reserve. This audiogram showed pure tone thresholds in the right ear at frequencies of 500, 1000, 2000, 3000, and 4000 hertz of 5, 5, 5, 5, and 15 decibels, respectively. Corresponding findings in the left ear were 5, 5, 5, 25, and 25 decibels. 

The Veteran underwent a May 1988 audiology examination with the Army Reserve. This audiogram showed pure tone thresholds in the right ear at frequencies of 500, 1000, 2000, 3000, and 4000 hertz of 10, 5, 5, 25, and 25 decibels, respectively. Corresponding findings in the left ear were 10, 5, 10, 25, and 30 decibels. 

The Court has held that a significant decibel increase in pure tone thresholds during service is an important factor for in-service incurrence, even if these shifts do not demonstrate in-service hearing loss disability under § 3.385. Hensley, 5 Vet. App. at 159-60. Furthermore, the Court stated in Hensley that the threshold for normal hearing is from zero to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Id. at 157. In the present case, Missouri Army National Guard and the Army Reserve examinations in the 1970s and 1980s reveal significant auditory shifts in pure tone thresholds at frequencies of 3000 and 4000 hertz, as well threshold levels above 20 decibels at certain frequencies. All of this serves as circumstantial evidence in support of hearing loss disability incurred by acoustic trauma sustained during periods of ACDUTRA and INACDUTRA training with the Army Reserve and Army National Guard in the 1970s and 1980s. 

Regardless, a claimant may establish direct service connection for a hearing disability initially manifest years after separation from service on the basis of evidence showing that the current hearing loss is causally related to injury or disease suffered in service. Hensley, 5 Vet. App. at 164. See also 38 U.S.C.A. 1113(b); 38 C.F.R. 3.303(d). 

The Board now turns to the central issue in this case - whether there is probative, competent evidence of a nexus (i.e., link) between the Veteran's current bilateral hearing loss and tinnitus and the confirmed acoustic trauma during his periods of regular, ACDUTRA, and INACDUTRA service. Boyer, 210 F.3d at 1353; Maggitt v. West, 202 F.3d 1370, 1375 (Fed. Cir. 2000). The evidence in the claims folder contains an unfavorable November 2008 VA medical opinion. However, the evidence also consists of a favorable November 2010 VA medical opinion. 

In evaluating the probative value of competent medical evidence, the Court has stated, in pertinent part:

The probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches. . . . As is true with any piece of evidence, the credibility and weight to be attached to these opinions [are] within the province of the adjudicators; . . .

Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). 

The Board must account for the evidence which it finds to be persuasive or unpersuasive, analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant, and provide the reasons for its rejection of any such evidence. See Struck v. Brown, 9 Vet. App. 145, 152 (1996); Caluza v. Brown, 7 Vet. App. 498, 506 (1995); Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994); Abernathy v. Principi, 3 Vet. App. 461, 465 (1992); Simon v. Derwinski, 2 Vet. App. 621, 622 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164, 169 (1991). It is not error for the Board to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons or bases. See Owens v. Brown, 7 Vet. App. 429, 433 (1995).

As to the unfavorable evidence, a November 2008 VA audiology examiner opined that bilateral hearing loss was "less likely as not (less than 50/50 probability) caused by or a result of acoustic trauma during military service." The examiner reasoned that the Veteran's alleged acoustic trauma as a deckhand and from a gun turret aboard a naval vessel cannot be verified. The examiner noted a post-service history of noise exposure and family history of hearing loss as additional factors. 

However, this opinion has significant flaws. It failed to consider the Veteran's allegation of acoustic trauma in the Army Reserve and National Guard. It also did not provide an explanation or details how employment as a dental technician or mail handler would result in post-service noise exposure or acoustic trauma. The weight of a medical opinion is diminished where the basis for the opinion is not adequately stated. See Sklar v. Brown, 5 Vet. App. 140 (1993); Reonal v. Brown, 5 Vet. App. 458 (1993); Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993); Swann v. Brown, 5 Vet. App. 229, 232 (1993). The Court has also held that a VA medical examiner's conclusions were of "questionable probative value" when the examiner failed to consider certain relevant information. Mariano v. Principi, 17, Vet. App. 305, 312 (2003). Thus, this opinion is entitled to very little probative value. 

As to the favorable evidence, a November 2010 VA audiology examiner opined that bilateral hearing loss was "as least as likely as not (50/50 probability) caused by or a result of acoustic trauma" during service. The examiner acknowledged the Veteran's exposure to high-risk noise in the Navy as a deckhand using chipper hammers. The examiner also noted the Veteran served in the National Guard where he was in close proximity to artillery fire during his two-week annual trainings. His post-service exposure to noise was present but not excessive. His current hearing loss is indicative of hearing loss due to noise exposure interacting with the normal effects of aging. His current audiogram does not reveal hearing loss attributable to a family history of hearing loss. The examiner concluded that the absence of hearing loss at discharge from the Navy in 1967 still leaves open the probability of military-induced hearing loss from acoustic trauma. As to tinnitus, the VA examiner assessed that this disorder was not the result of military acoustic trauma. This VA examination and opinion was thorough, supported by an explanation, based on a review of the claims folder, and supported by other evidence of record. This opinion is entitled to great probative weight in support of the hearing loss claim. 

In summary, the Board concludes that the favorable, positive opinion suggesting a nexus between hearing loss and service outweighs the unfavorable, negative opinion which was based on limited discussion and not supported by adequate explanation. 

As to tinnitus, a disability can also be service connected on a secondary basis if it is proximately due to or the result of a service-connected condition. 38 C.F.R. § 3.310(a). Secondary service connection may be established by any increase in severity (i.e., aggravation) of a nonservice-connected condition that is proximately due to or the result of a service-connected condition. 38 C.F.R. § 3.310(b), effective October 10, 2006. See 71 Fed. Reg. 52,744-52,747 (September 7, 2006). See also Allen v. Brown, 7 Vet. App. 439, 448 (1995); Tobin v. Derwinski, 2 Vet. App. 34, 39 (1991). A claim for secondary service connection requires competent medical evidence linking the asserted secondary disorder to the service-connected disability. Velez v. West, 11 Vet. App. 148, 158 (1998). See also Wallin v. West, 11 Vet. App. 509, 512 (1998) and McQueen v. West, 13 Vet. App. 237 (1999) (both indicating, like Velez, that competent medical nexus evidence is required to associate a disorder with a service-connected disability).

With regard to secondary service connection, there is probative medical evidence of record that demonstrates the Veteran's tinnitus was caused by his service-connected bilateral hearing loss disability. 38 C.F.R. § 3.310(a); Velez, 11 Vet. App. at 158. Specifically, the November 2010 VA audiology examiner opined that tinnitus was "as likely as not" a symptom "associated" with the Veteran's hearing loss. This VA opinion provides strong evidence in support of secondary service connection for tinnitus. There is no contrary, negative opinion of record. 

Accordingly, resolving any doubt in the Veteran's favor, the evidence supports service connection for bilateral hearing loss and secondary service connection for tinnitus. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. The appeal is granted as to both issues. The Board is granting secondary service connection for tinnitus on the basis that is the direct result of the Veteran's service-connected bilateral hearing loss disability, as opposed to aggravation.

The Board does not express an opinion as to the severity of these disorders for the purpose of assigning a disability rating, as the RO will undertake these decisions on implementation of this action. 


ORDER

Service connection for bilateral hearing loss is granted. 

Service connection for tinnitus as secondary to bilateral hearing loss is granted. 




____________________________________________
Vito A. Clementi
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs