Citation Nr: 1114721 
Decision Date: 04/14/11 Archive Date: 04/21/11

DOCKET NO. 06-09 959 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for hypertension.

2. Entitlement to service connection for chronic obstructive pulmonary disease (COPD), congestive heart failure, and for status post-bypass surgery, to include as secondary to hypertension.

3. Entitlement to service connection for an acquired psychiatric disorder, originally claimed as depression.


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


ATTORNEY FOR THE BOARD

Michael J. A. Klein, Associate Counsel


INTRODUCTION

The Veteran had active military service from August 1970 to July 1979. 

This appeal comes to the Board of Veterans' Appeals (Board) from an April 2005 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Decatur, Georgia (Atlanta RO), which, inter alia, denied the Veteran's service connection claims currently on appeal.

In his March 2006 VA Form 9 (substantive appeal), the Veteran requested a hearing before a Veterans Law Judge at the RO. A hearing was scheduled for February 10, 2009, and the Veteran was notified via letters dated on January 12 and 26, 2009. However, he failed to report at his scheduled time and thus far has not offered an explanation for his absence. Accordingly, the Board will adjudicate the Veteran's appeal as if the hearing request had been withdrawn. 38 C.F.R. § 20.704(d) (2010).

In July 2009, the Board remanded the case to the RO for further evidentiary development. The case has returned to the Board and is again ready for appellate review.

The Board considers the Veteran's claim for service connection for depression as encompassing all psychiatric disorders evident in the record, pursuant to the decision of the United States Court of Appeals for Veterans Claims (Court) in Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009) (holding that the scope of a mental health disability claim includes any mental health disability that could reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record). The title page has been revised as appropriate to reflect this.



FINDINGS OF FACT

1. The Veteran has been competently diagnosed with hypertension.

2. There is no credible or competent evidence of chronic hypertension during or within one year of, his military service or of continuous symptoms of any such disorder since service, nor is there any credible or competent evidence of a link between the Veteran's current hypertension disorders and his period of active military service.

3. The Veteran has been competently diagnosed with COPD, congestive heart failure, and as status post-bypass surgery.

4. There is no credible or competent evidence of COPD or congestive heart failure during or within one year of his military service, or of continuous symptoms of any such disorder since service, nor is there any credible or competent evidence of a link between the Veteran's current COPD and congestive heart failure disorders and his period of active military service or to any service-connected disorder.

5. The Veteran has been competently diagnosed with an acquired psychiatric disorder.

6. There is no credible or competent evidence of an acquired psychiatric disorder during his military service, or of continuous symptoms of any such disorder since service, nor is there any credible or competent evidence of a link between the Veteran's current acquired psychiatric disorders and his period of active military service.



CONCLUSIONS OF LAW

1. Hypertension was not incurred or aggravated during service and may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5103, 5103A, 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2010).

2. COPD and congestive heart failure disorders were not incurred or aggravated during service and may not be presumed to have been incurred in service, nor are they due to any service-connected disorder. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5103, 5103A, 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.310 (2010).

3. An acquired psychiatric disorder, to include depression, was not incurred or aggravated during service. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.159, 3.303, (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Duties to Notify and Assist

Review of the claims folder reveals limited compliance with the Veterans Claims Assistance Act of 2000 (VCAA), 38 U.S.C.A. § 5100 et seq. See 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The duty to notify was accomplished by way of VCAA letters from the AOJ to the Veteran dated in January 2005 and August 2009. Those letters effectively satisfied the notification requirements of the VCAA consistent with 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) by: (1) informing him about the information and evidence not of record that was necessary to substantiate his service connection and secondary service connection claims; (2) informing him about the information and evidence that VA would seek to provide; and (3) informing him about the information and evidence that he was expected to provide. See also Pelegrini v. Principi, 18 Vet. App. 112, 120-121 (2004) (Pelegrini II); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). 

Furthermore, the August 2009 letter from the AOJ advised the Veteran of the elements of a disability rating and an effective date, which are assigned if service connection is awarded. Dingess v. Nicholson, 19 Vet. App. 473, 486 (2006); aff'd sub nom. Hartman v. Nicholson, 483 F.3d 1311 (2007). Thus, the Veteran has received all required notice in this case, such that there is no error in the content of his VCAA notice. 

With regards to the timing of his VCAA notice, the Board sees the AOJ did not provide the Veteran all necessary VCAA notice prior to initially adjudicating his claims in April 2005, the preferred sequence. But in Pelegrini II, the Court clarified that in these situations VA does not have to vitiate that initial decision and start the whole adjudicatory process anew, as if that decision was never made. Rather, VA need only ensure that the Veteran receives (or since has received) content-complying VCAA notice, followed by readjudication of his claim, such that the intended purpose of the notice is not frustrated and he is still provided proper due process. Id. 120. In other words, he must be given an opportunity to participate effectively in the processing of his claim. The United States Court of Appeals for the Federal Circuit (Federal Circuit Court) has held that a statement of the case (SOC) or supplemental SOC (SSOC) can constitute a "readjudication decision" that complies with all applicable due process and notification requirements if adequate VCAA notice is provided prior to the SOC or SSOC. Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007) (Mayfield IV). As a matter of law, the provision of adequate VCAA notice prior to a readjudication "cures" any timing problem associated with inadequate notice or the lack of notice prior to an initial adjudication. See also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

Here, VA cured the timing notice after sending the additional VCAA notice letter in August 2009 by readjudicating the case by way of the February 2011 SSOC. Therefore, since VA cured the timing error and because the Veteran did not challenge the sufficiency of the notice, the Board finds that VA complied with its duty to notify. In essence, the timing defect in the notices has been rectified by the latter readjudication. In addition, the Veteran has never alleged how any timing error prevented him from meaningfully participating in the adjudication of his claim. As such, the Veteran has not established prejudicial error in the timing of VCAA notice. See Shinseki v. Sanders / Simmons, 129 S. Ct. 1696 (2009).

In addition to notification, VA is required to assist the Veteran in finding evidence to support his claims. See 38 U.S.C.A. § 5103A. The AOJ has secured the Veteran's VA medical treatment records, and private treatment records identified by the Veteran. The Veteran has submitted personal statements. The Veteran has not provided authorization for VA to obtain any additional private medical records, nor has he indicated that such records exist. 

The Board acknowledges that the AOJ has been unable to obtain the Veteran's complete service treatment records (STRs) and service personnel records (SPRs). The Court has held that VA has a heightened duty to assist a claimant in developing his claim when the Veteran's service treatment records are not available for any reason, including because they were destroyed in the fire at the NPRC in the early 1970s. This duty includes the search for alternate medical records, as well as a heightened obligation on the Board's part to explain its findings and conclusions, and carefully consider the benefit-of-the-doubt rule. See Pruitt v. Derwinski, 2 Vet. App. 83, 85 (1992); O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). 

In this regard, in February 2005, the AOJ received a response from the NPRC that all the requested records had been mailed. These records contained a copy of the Veteran's enlistment examination and a statement from the Department of the Air Force that the records provided were all the STRs available for the Veteran. Then, in July 2009 the Board remanded the Veteran's claim, for further records related to the Veteran's service (particularly based on any active duty training (ACDUTRA) and inactive duty training (INACDUTRA) service), based on the Veteran's DD Form 214 which indicated that a portion of his active military service was while associated with the Air Force Reserve. To assure that all the Veteran's records were obtained, the AOJ requested any available records from the Veteran's service from the Georgia Army National Guard in August 2009 and received negative responses in December 2009 and September 2010. The AOJ also contacted the Air Force Reserve in January and September 2010, receiving a negative response in October 2010. Finally, the AOJ contacted the NPRC in September 2010 and received the Veteran's service personnel records (SPRs), which do not show any ACDUTRA or inactive INACDUTRA service. As such, the AOJ has received negative responses from the appropriate agencies, with no indication that the Veteran's records might be held at any other records custodian, such that the Board concludes that further efforts to obtain the Veteran's records from service would be futile. 38 C.F.R. § 3.159(c)(2). Therefore, the Board concludes that the AOJ has complied with the duties to pursue such records and acknowledges the enhanced duties to the Veteran due to the inability to locate his service records. 

The Board notes that no medical examination has been conducted or medical opinion obtained with respect to the Veteran's service connection claims. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also 38 U.S.C.A. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4). However, the standards of McLendon are not met in this case. Under McLendon v. Nicholson, 20 Vet. App. 79, 82 (2006), in a disability compensation (service connection) claim, VA must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for VA to make a decision on the claim. See also 38 U.S.C.A. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4)(i); Charles v. Principi, 16 Vet. App. 370, 374-75 (2002). As related below, the Board has determined that, although the Veteran is currently experiencing hypertension, COPD and congestive heart failure disorders, as well as an acquired psychiatric disorder, there is no credible evidence of any in-service incurring event, injury, or disease. Therefore, without any credible evidence of such an incident to which the Veteran's current disorders may be associated, the Board concludes no basis for a VA examination or medical opinion to be obtained. Thus, the Board is satisfied that the duty to assist has been met. 38 U.S.C.A. § 5103A. 

The Board is also satisfied as to substantial compliance with its August 2009 remand directives. Stegall v. West, 11 Vet. App. 268, 271 (1998); see also D'Aries v. Peake, 22 Vet. App. 97 (2008). 

As noted above, the Board remanded the Veteran's claim for further efforts by the AOJ to obtain all available STRs and SPRs relevant to the Veteran. The AOJ was to contact, as appropriate, the Veteran's unit, the Adjutant General of the State of Georgia, and the NPRC, and issue a formal finding of unavailability of the Veteran's records. As related above, the AOJ has contacted the appropriate records custodians including the Georgia Army National Guard (Joint Force Headquarters), the Air Force Reserve, and the NPRC, and received negative responses from each. Although the AOJ has not contacted the Veteran's unit or provided a formal finding of unavailability, the Board concludes that these negative responses from the relevant records custodians without any indication that some other agency may hold the Veteran's records, constitutes substantial compliance in that it is clear that further efforts to obtain the Veteran's records would be futile. Stegall, at 271; D'Aries; see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding that there was no Stegall violation when the examiner made the ultimate determination required by the Board's remand, because such determination more than substantially complied with the Board's remand order). Therefore, although the AOJ has not complied precisely with the requests suggested in the July 2009 Board remand, the appropriate agencies which might have held records for the Veteran have been contacted and provided negative responses, such that the Board may conclude that there has been substantial compliance with the remand directives.

In the July 2009 remand, the Board also remanded the decision for the AOJ to provide the Veteran with notice for establishing a claim for service connection based on any ACDUTRA or INACDUTRA military service that he may have experienced, as this had been raised as a possibility by the record at that time. However, despite the substantial efforts of the AOJ related above, there is no evidence that the Veteran has ever had any ACDUTRA or INACDUTRA service beyond his active duty service. Without such evidence, there is no basis for notification of the Veteran of the elements of such a claim. In addition, the AOJ was directed to provide the Veteran with a VA medical examination relevant to his claims if it was found that there was evidence of the incurring incidents alleged. However, as the evidence stands as related below there is no credible or competent evidence of any in service incurring incidents, such that the remand request for a VA medical examination and opinion does not take effect. Therefore, the development conducted subsequent to the Board remand has provided substantial compliance with the terms of the remand. Id. Finally, as directed, the Veteran was provided with an AOJ readjudication of his claims by the February 2007 SSOC. As such, the Board concludes that no further development in terms of obtaining medical records, examinations, or opinions, is necessary. 38 U.S.C.A. § 5103A.

Governing Laws for Service Connection

Service connection may be granted if it is shown the Veteran developed a disability resulting from an injury sustained or disease contracted in the line of duty, or for aggravation during service of a pre-existing condition beyond its natural progression. 38 U.S.C.A. §§ 1110 (wartime service), 1131 (peacetime service), 1153 (aggravation). 

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004), citing Hansen v. Principi, 16 Vet. App. 110, 111 (2002). 

In the absence of proof of a current disability, there can be no valid claim. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992) (indicating service connection presupposes a current diagnosis of the condition claimed).

A disorder may also be service connected if the evidence of record reveals that the Veteran currently has a disorder that was chronic in service or, if not chronic, that was seen in service with continuity of symptomatology demonstrated thereafter. 38 C.F.R. § 3.303(b); Savage v. Gober, 10 Vet. App. 488, 494-97 (1997). That is, a Veteran can establish continuity of symptomatology in cases where the Veteran cannot fully establish the in-service and/or nexus elements of service connection discussed above. 38 C.F.R. § 3.303(b); Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). To establish continuity of symptomatology, the Court held a Veteran must show "(1) that a condition was 'noted' during service, (2) with evidence of post-service continuity of the same symptomatology, and (3) medical or lay evidence of a nexus between the present disability and the post-service symptomatology." Barr, 21 Vet. App. at 307. Whether medical evidence or lay evidence is sufficient to relate the current disorder to the in-service symptomatology depends on the nature of the disorder in question, that is, whether the relationship and disability are capable of lay observation. Savage, 10 Vet. App. at 497; accord Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). For continuity of symptomatology, although the Board may weigh the absence of contemporaneous medical evidence against the lay evidence in determining credibility, it cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1337 (2006).

Some chronic diseases are presumed to have been incurred in service, although not otherwise established as such, if manifested to a degree of ten percent or more within one year of the date of separation from service. 38 U.S.C.A. § 1112; 38 C.F.R. § 3.307(a)(3); see 38 U.S.C.A. § 1101(3) and 38 C.F.R. § 3.309(a) (listing applicable chronic diseases, such cardiovascular-renal disease, including hypertension). This presumption, however, is rebuttable by probative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

Disorders diagnosed after discharge may still be service connected if all the evidence, including pertinent service records, establishes the disorder was incurred in service. 38 C.F.R. § 3.303(d); Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

A disability can also be service connected if it is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). A claim for secondary service connection requires competent medical evidence linking the asserted secondary disorder to the service-connected disability. Velez v. West, 11 Vet. App. 148, 158 (1998); see also Wallin v. West, 11 Vet. App. 509, 512 (1998); McQueen v. West, 13 Vet. App. 237 (1999) (both indicating, like Velez, that competent medical nexus evidence is required to associate a disorder with a service-connected disability).

In short, in order to establish entitlement to service connection on this secondary basis, there must be: (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) medical evidence establishing a nexus (i.e., link) between the service-connected disability and the current disability. Wallin v. West, 11 Vet. App. 509, 512 (1998).

Competent medical evidence may mean statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of the facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2). In essence, lay testimony is competent when it regards the readily observable features or symptoms of injury or illness and "may provide sufficient support for a claim of service connection." Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

VA is to give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability benefits. 38 U.S.C.A. §§ 1154(a). With regard to lay evidence, the Federal Circuit Court recently held that lay evidence, when competent, can establish a nexus between the Veteran's disability and an in-service disease or injury. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). Citing its previous decisions in Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006) and Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007), the Federal Circuit stated in Davidson that it has previously and explicitly rejected the view that competent medical evidence is always required when the determinative issue in a claim for benefits involves either medical etiology or a medical diagnosis. Id. at 1316. Instead, under 38 U.S.C.A. §§ 1154(a), lay evidence can be competent and sufficient to establish a diagnosis of a condition when: (1) a layperson is competent to identify the medical condition, (e.g., a broken leg), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau, 492 F.3d at 1377 (footnote omitted). For example, a layperson would be competent to identify a "simple" condition like a broken leg, but would not be competent to identify a form of cancer. Id. at 1377 n.4.

In short, lay evidence that is both competent and credible may establish the presence of a condition during service, post-service continuity of symptomatology, and evidence of a nexus between the present disability and the post-service symptomatology. Barr, 21 Vet. App. at 307-09. But "[t]he type of evidence that will suffice to demonstrate entitlement to service connection, and the determination of whether lay evidence may be competent to satisfy any necessary evidentiary hurdles, depends on the type of disability claimed." Id. at 308. 

Finally, the Board notes that the Veteran raised the possibility that his COPD and congestive heart failure may be secondary to his hypertension that is due to his military service. As the Board has concluded that there is no evidence to show that his hypertension may be service connected, further consideration of a relationship between his COPD and congestive heart failure and his hypertension is moot and analysis of any secondary or aggravating factors between the two disorders is irrelevant. 38 C.F.R. § 3.310. 

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 



Analysis - Service Connection for Hypertension and COPD, Congestive Heart Failure, and for Status Post-Bypass Surgery, also as Secondary to Hypertension

The Veteran's hypertension, COPD, congestive heart failure, and status post-bypass surgery, as secondary to hypertension-related disorders, all present similar issues of law and fact and will therefore be addressed together in the following analysis.

The Veteran has claimed that his hypertension began during his military service and he ultimately developed COPD and congestive heart failure disorders that he currently experiences. See the Veteran's January 2005 claim and associated statement, September 2005 notice of disagreement (NOD), and March 2006 substantive appeal (VA Form 9). 

As mentioned above, the first and perhaps most fundamental requirement for any service-connection claim is proof the Veteran currently has the claimed disability. Boyer, 210 F.3d at 1353; Brammer, 3 Vet. App. at 225. The Veteran's VA medical treatment records show that he has been receiving ongoing treatment for hypertension, COPD and congestive heart failure disorders at least as early as November 2003. Furthermore, the private treatment records obtained by the AOJ indicate that the Veteran has been receiving ongoing treatment for congestive heart failure and COPD, as well as a bypass surgery in April 2004. Therefore, there is clearly evidence that the Veteran currently experiences hypertension, COPD, and congestive heart failure disorders, which may be considered for service connection.

Consequently, the determinative issue is whether the Veteran's current hypertension, COPD, or congestive heart failure disorders are attributable to the Veteran's military service. See Watson v. Brown, 4 Vet. App. 309, 314 (1993) ("A determination of service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or disease incurred in service."). See, too, Maggitt v. West, 202 F.3d 1370, 1375 (Fed. Cir. 2000); D'Amico v. West, 209 F.3d 1322, 1326 (Fed. Cir. 2000); Hibbard v. West, 13 Vet. App. 546, 548 (2000); Collaro v. West, 136 F.3d 1304, 1308 (Fed. Cir. 1998). 

In this case, the Veteran has simply alleged that he was initially treated for hypertension during his military service. See the Veteran's January 2005 claim. He subsequently indicated that he was "grounded" for all of his claimed conditions during his military service. The Veteran is competent to report that he was treated for hypertension, COPD, and congestive heart failure during his military service. See Layno, at 469; see also 38 C.F.R. § 3.159(a)(2). There are no contemporaneous records of such an incident. In this regard, again, the Board acknowledges that when STRs are lost or missing, VA has a heightened obligation to consider the benefit of the doubt. See Pruitt v. Derwinski, 2 Vet. App. at 85; O'Hare v. Derwinski, 1 Vet. App. at 367. That said, although there is a heightened obligation to more fully explain the reasons and bases for a decision - when, as here, there are missing STRs - this does not obviate the need for evidence supporting the claim. See Milostan v. Brown, 4 Vet. App. 250, 252 (1993) (citing Moore v. Derwinski, 1 Vet. App. 401, 406 (1991) and O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991)); see also Collette v. Brown, 82 F.3d 389, 392-93 (Fed. Cir. 1996); Arms v. West, 12 Vet. App. 188, 194-95 (1999). In other words, the fact that service records are not available does not lower the threshold for an allowance of a claim. Rather, the Board's obligation to discuss and evaluate evidence is heightened. Russo v. Brown, 9 Vet. App. 46 (1996). 

In such an instance, the Veteran's credibility affects the weight to be given to his testimony, and it is the Board's responsibility to determine the appropriate weight. Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Credibility can be generally evaluated by a showing of interest, bias, or inconsistent statements, and the demeanor of the witness, facial plausibility of the testimony, and the consistency of the witness testimony." Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996). The Board emphasizes that personal interest may affect the credibility of the evidence. Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991). As such, the Board must analyze the credibility and probative value of the evidence, account for the evidence it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Caluza, 7 Vet. App. at 506 (citing State v. Asbury, 415 S.E.2d 891, 895 (W. Va. 1992). 

In this case, the Veteran's statements regarding any in-service diagnosis of or treatment for hypertension, COPD, or congestive heart failure have been extraordinarily vague and general. At the time of his original claim in January 2005, the Veteran indicated that he was treated for hypertension generally during his service. Then, in his September 2005 NOD, the Veteran indicated that he was grounded for "each of the above conditions." Then, in his March 2006 VA Form 9, the Veteran indicated that he was treated and suspended from flight duty for these conditions. The Veteran has not indicated a date of onset, or the nature of his treatment in service, or even the rough dates of that he was allegedly grounded from flight status for his conditions. The Veteran has indicated, implausibly, that all of his conditions (even the COPD, and congestive heart failure that at the time of his claim he had stated had developed some time after his service) caused him to be grounded from flight status during his military service. The Board notes that the duty to assist is not a one-way street; a claimant cannot remain passive when he has relevant information, particularly as here where the Veteran is well aware of VA's inability to obtain complete records of the incidents alleged. See Wamhoff v. Brown, 8 Vet. App. 517, 522 (1996) (VA has duty to assist the Veteran, not a duty to prove his claim while the Veteran remains passive); accord Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). 

Furthermore, the Veteran's statements regarding the history of his hypertension, COPD, congestive heart failure disorders have not been consistent. In separate sections of his original claim, the Veteran indicated that his conditions began in January 1994 and in May 2004. Finally, the Veteran's September 2005 NOD, indicated that the Veteran was experiencing hypertension, congestive heart failure, and COPD during his military service. The Board acknowledges that it is prohibited from determining that lay evidence lacks credibility solely because it is unaccompanied by contemporaneous medical evidence. Buchanan, 451 F.3d at 1336-37. The Board may, however, consider a lack of contemporaneous medical evidence as one factor in determining the credibility of lay evidence. Id. at 1337. In this instance, it is not the lack of STRs that renders the Veteran's statements not credible; it is the inchoate and contradictory nature of the Veteran statements that undermines the Veteran's credibility. 

Finally, the Board notes that if the Veteran's statements were true, he would have been experiencing these conditions for over 20 years prior to his application for service connection. The Federal Circuit Court has held that an extensive lapse of time between the alleged events in service and the initial manifestation of the subsequently reported symptoms and/or treatment is a factor for consideration in deciding a service connection claim. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). In this case, the Board finds that the lack of relevant detail and the Veteran's inconsistent statements render his statements in this regard not credible. Therefore, the Board concludes that the Veteran's statements in this regard are not credible to the extent that he reports the onset of any chronic hypertension, COPD, or congestive heart failure disorder in service, or that his statements show any continuity of symptomatology of his current hypertension, COPD, or congestive heart failure dating from his military service. 38 C.F.R. § 3.303(b); Savage, 10 Vet. App. 494-97. Likewise, since there is no objective competent diagnosis of hypertension within one year of his active military service, the Veteran is not entitled to application of the presumptive provisions either. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

With the Veteran's statements regarding the onset of his disorder in service found not credible, the Board concludes that there is likewise no credible evidence of an in-service incurring incident. See Shedden, 381 F.3d at 1167. Likewise, with no credible evidence of any incurring incident in service, there is no credible or competent evidence of any connection between the Veteran's military service and his current hypertension, COPD, or congestive heart failure disorders. Id. Finally, without service connection for hypertension, any consideration of the Veteran's COPD, and congestive heart failure as secondary to hypertension is moot. 38 C.F.R. § 3.310.

In conclusion, having reviewed all of the evidence contained within the record which supports the Veteran's claims for service connection, on direct, secondary, or aggravation bases, for hypertension, COPD, or congestive heart failure, in the light most favorable to the Veteran, the Board finds that the preponderance of the evidence is against service connection for such disorders on a direct or presumptive basis, or as secondary to any aggravated service-connected disorder, and there is no reasonable doubt to resolve in the Veteran's favor. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310.

Analysis - Service Connection for an Acquired Psychiatric Disorder

The Veteran has claimed that he currently experiences depression which was first treated during his military service. See the Veteran's January 2005 claim. Although there are no records of such treatment. Again, the Board acknowledges that when STRs are lost or missing, VA has a heightened obligation to consider the benefit of the doubt. See Pruitt v. Derwinski, 2 Vet. App. at 85; O'Hare v. Derwinski, 1 Vet. App. at 367. That said, although there is a heightened obligation to more fully explain the reasons and bases for a decision - when, as here, there are missing STRs - this does not obviate the need for evidence supporting the claim. See Milostan v. Brown, 4 Vet. App. 250, 252 (1993) (citing Moore v. Derwinski, 1 Vet. App. 401, 406 (1991) and O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991)); see also Collette v. Brown, 82 F.3d 389, 392-93 (Fed. Cir. 1996); Arms v. West, 12 Vet. App. 188, 194-95 (1999). In other words, the fact that service records are not available does not lower the threshold for an allowance of a claim. Rather, the Board's obligation to discuss and evaluate evidence is heightened. Russo v. Brown, 9 Vet. App. 46 (1996). 

As mentioned above, the first and perhaps most fundamental requirement for any service-connection claim is proof the Veteran currently has the claimed disability. Boyer, 210 F.3d at 1353; Brammer, 3 Vet. App. at 225. The Veteran's VA medical treatment records show that he was indicated as experiencing an anxiety disorder, not otherwise specified, in May 2004. Then, in June 2004, he was provided with a depression-screening test. Finally, the Veteran was indicated as experiencing alcohol dependency and depression, not otherwise specified, in July 2004. 

Insofar as the Veteran has been diagnosed with alcohol dependency, generally, for claims filed after October 31, 1990, service-connected disability compensation is precluded for disability that is the result of the Veteran's willful misconduct or the abuse of alcohol or drugs. 38 U.S.C.A. §§ 1110, 1131; see also 38 C.F.R. §§ 3.1(n), 3.301. However, service-connected disability compensation may be awarded for an alcohol or drug abuse disability secondary to a service-connected disability or use of an alcohol or drug abuse disability as evidence of the increased severity of a service-connected disability. Allen v. Principi, 237 F.3d 1368, 1376 (Fed. Cir. 2001). In this regard, the Federal Circuit cautioned that compensation would only result where there was clear medical evidence establishing that the alcohol or drug abuse disability was caused by a Veteran's primary service-connected disability. Id. It also determined that the statute precludes compensation in two situations: 1) for primary alcohol abuse disabilities, i.e. alcohol abuse disability arising during service from voluntary and willful drinking to excess; and 2) for secondary disabilities (such as cirrhosis of the liver) that result from primary alcohol abuse. Id. The Veteran is not competent to relate that any drug use was self-medication for such an acquired psychiatric disorder, 38 C.F.R. § 3.159(a)(1), and there is no competent medical opinion indicating that any in-service or post-service drug or alcohol problems were a form of self-treatment for a service-incurred depression, or other acquired psychiatric disorder. As such, with regard to his substance abuse, there is no medical evidence demonstrating that this was secondary to any service-incurred acquired psychiatric disorder. 38 U.S.C.A. §§ 1110, 1131; see also 38 C.F.R. §§ 3.1(n), 3.301, 3.310. 

Consequently, the determinative issue is whether the Veteran's current acquired psychiatric disorder is attributable to the Veteran's military service. See Watson v. Brown, 4 Vet. App. 309, 314 (1993) ("A determination of service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or disease incurred in service."). See, too, Maggitt v. West, 202 F.3d 1370, 1375 (Fed. Cir. 2000); D'Amico v. West, 209 F.3d 1322, 1326 (Fed. Cir. 2000); Hibbard v. West, 13 Vet. App. 546, 548 (2000); Collaro v. West, 136 F.3d 1304, 1308 (Fed. Cir. 1998). 

In this case, the Veteran has simply alleged that he was treated for depression in service in September 1978, and that he now experiences depression. See the Veteran's January 2005 claim. He has also alleged that he was also "grounded" from flight duty due to his depression. See the Veteran's September 2005 NOD and March 2006 VA Form 9. The Veteran is competent to indicate that he was treated for depression during his military service. See Layno, at 469; see also 38 C.F.R. § 3.159(a)(2). 

Once again, the Veteran's credibility affects the weight to be given to his testimony, and it is the Board's responsibility to determine the appropriate weight. Washington v. Nicholson, 19 Vet. App. at 368. Credibility can be generally evaluated by a showing of interest, bias, or inconsistent statements, and the demeanor of the witness, facial plausibility of the testimony, and the consistency of the witness testimony." Caluza v. Brown, 7 Vet. App. at 510-511. 

As with the statements regarding his in service hypertension and cardiac disorders related above, the Veteran's statements have been extraordinarily vague. At the time of his January 2005 claim, the Veteran indicated that he was treated for depression. The Veteran has not indicated if the nature of his treatment or symptoms at that time or any incurring event, nor has he indicated that this was diagnosed as a chronic disorder in service, and finally he has not indicated that his depression has manifested with continuous symptoms since his release from active duty service. The Veteran also has not described the nature of such symptoms from his time of military service to the present. The Board again notes that the duty to assist is not a one-way street; a claimant cannot remain passive when he has relevant information. See Wamhoff v. Brown, 8 Vet. App. at 522. The Board cannot determine that lay evidence lacks credibility solely because it is unaccompanied by contemporaneous medical evidence. Buchanan, 451 F.3d at 1336-37. The Board may, however, consider a lack of contemporaneous medical evidence as one factor in determining the credibility of lay evidence. Id. at 1337. 

In this case, it is not the lack of a September 1978 STR verifying the Veteran's asserted in-service depression that undermines his credibility. The Board concludes that it is the inchoate nature of his generally non-specific but self-interested statements that causes the Board to conclude that the Veteran's statements are not credible. This is particularly so in the fact of the Veteran's awareness that VA has been unable to obtain any corroborating STRs. As such, the Board concludes that the Veteran's statements regarding a history of depression in service are not credible. The Board concludes that with no credible evidence of an in-service incurring incident, there is no further basis for analysis of any connection between such an incident and the Veteran's current acquired psychiatric disorder. See Shedden, 381 F.3d at 1167. 

The Board notes that the Veteran has not alleged any history of symptoms or treatment for a chronic acquired psychiatric disorder during his military service, or of continuity of symptomatology of such a disorder dating from his military service. 38 C.F.R. § 3.303(b); Savage, 10 Vet. App. 494-97. 

In conclusion, having reviewed all of the evidence contained within the record in the light most favorable to the Veteran, the Board finds that the preponderance of the evidence is against service connection for an acquired psychiatric disorder, on either direct basis with no reasonable doubt to resolve in the Veteran's favor. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

Service connection for hypertension is denied.

Service connection for COPD, congestive heart failure, and for status post-bypass surgery, to include as secondary to hypertension, is denied.

Service connection for an acquired psychiatric disorder is denied.



____________________________________________
A. BRYANT
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs