http://www.va.gov/vetapp16/Files2/1617327.txt

Citation Nr: 1617327 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 12-35 678 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee

THE ISSUE

Entitlement to service connection for polyneuropathy of the lower extremities, including as secondary to service-connected disability.

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

The Appellant

ATTORNEY FOR THE BOARD

Hallie E. Brokowsky, Counsel

INTRODUCTION

The Veteran served on active duty from August 1952 to May 1953. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2011 rating decision by the Regional Office (RO) of the Department of Veterans Affairs (VA) in Nashville, Tennessee. 

In August 2014, the Veteran testified before the undersigned Veterans Law Judge at a videoconference hearing. A written transcript of that hearing is of record. 

This appeal was previously before the Board in November 2014 and in October 2015, at which time it was remanded for additional development. In response, the RO complied with the Board's remand directives by obtaining medical opinion fully responsive to the Board's opinion request. As such, the RO has substantially complied with the Board's prior remand directives. See D'Aries v. Peake, 22 Vet. App. 97, 104 (2008). The claim has been returned to the Board. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

1. Polyneuropathy of the lower extremities was not manifest during service or within one year of separation. Polyneuropathy of the lower extremities is not attributable to service.

2. Polyneuropathy of the lower extremities is not related (causation or aggravation) to a service-connected disease or injury.

CONCLUSION OF LAW

Polyneuropathy of the lower extremities was not incurred in or aggravated by service, and may not be presumed to have been incurred therein, and is not proximately due to, aggravated by, or a result of a service-connected disease or injury. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.310 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability.

In this case, the agency of original jurisdiction (AOJ) issued a notice letter, dated in March 2011, to the Veteran. This letter explained the evidence necessary to substantiate the Veteran's claim for service connection on direct, presumptive and secondary bases, as well as the legal criteria for entitlement to such benefits. The letter also informed him of his and VA's respective duties for obtaining evidence, and advised him of the criteria for establishing a disability rating and effective date of award should service connection be established. The AOJ decision that is the basis of this appeal was decided after the issuance of an initial, appropriate VCAA notice. As such, there was no defect with respect to timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

VA also has a duty to assist a veteran with the development of facts pertinent to the appeal. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). This duty includes the obtaining of "relevant" records in the custody of a Federal department or agency under 38 C.F.R. § 3.159(c)(2), as well as records not in Federal custody (e.g., private medical records) under 38 C.F.R. § 3.159(c)(1). VA will also provide a medical examination if such examination is determined to be "necessary" to decide the claim. 38 C.F.R. § 3.159(c)(4).

The claims file contains the Veteran's available service treatment records, reports of post-service treatment, and the Veteran's own statements in support of his claim. 

The Veteran was also afforded VA examinations responsive to the claim for service connection of polyneuropathy of the bilateral lower extremities. See McClendon v. Nicholson, 20 Vet. App. 79 (2006). Notably, the Veteran has pursued this appeal on a secondary basis only. The opinion and addendums, which were provided by a medical professional following thorough examination of the Veteran, solicitation of history, and review of the claims file, fully addresses the question posed by the Board and provides sufficient rationale to facilitate judicial review.

The Board also observes that the undersigned VLJ, at the Veteran's August 2014 hearing, explained the concept of service connection, as well as explained the evaluation process. Notably, the provisions of 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). At the hearing, the Veteran's polyneuropathy claim was premised on first establishing entitlement to service connection for a left knee disability, which was accomplished in a November 2014 Board decision. In light of the service connection award for left knee disability, the Board then conducted additional development involving a medical opinion as to whether the polyneuropathy of the lower extremities were caused or aggravated by service-connected left knee disability - as claimed by the Veteran - with an additional addendum obtained when service connection was later awarded for right knee disability. Thus, the undersigned is of the opinion that the conduct of the hearing satisfied the requirements of 38 C.F.R. § 3.103(c)(2) and that any potential deficiencies were cured with additional Board development on the dispositive issue in the case.

In sum, the Board has reviewed the Veteran's statements and medical evidence of record and concludes that there is no outstanding evidence with respect to the Veteran's claim. For these reasons, the Board finds that the VCAA duties to notify and assist have been met.

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2015). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service-the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

Service connection may be granted for any disease initially diagnosed after service when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. As polyneuropathy is a chronic disease for VA compensation purposes, if chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. §§ 3.303(b), 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. Any increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disease, will be service connected. However, VA will not concede that a nonservice-connected disease or injury was aggravated by a service-connected disease or injury unless the baseline level of severity of the nonservice-connected disease or injury is established by medical evidence created before the onset of aggravation or by the earliest medical evidence created at any time between the onset of aggravation and the receipt of medical evidence establishing the current level of severity of the nonservice-connected disease or injury. 38 C.F.R. § 3.310.

Based on the evidence of record, the Veteran's claim of service connection for polyneuropathy of the lower extremities, including as secondary to service-connected left knee synovitis, status post total left knee replacement and right knee disability, must be denied.

Here, no polyneuropathy of the lower extremities was noted during the Veteran's service. Likewise, no polyneuropathy was "noted" or identified within one year of separation. Additionally, there is nothing to suggest that there were characteristic manifestations sufficient to identify the claimed polyneuropathy during service or within one year of separation. 38 C.F.R. § 3.303(b). Rather, the Veteran has reported the onset of his polyneuropathy many years after service and has pursued this claim on a secondary basis only. See, e.g., VA Form 21-0820 (Report of General Information) dated February 2011; Transcript of August 2014 Board hearing, p. 6; and VA examination report dated August 2015. 

The weight of the evidence also reflects that the Veteran's polyneuropathy of the lower extremities is unrelated to his service or proximately due to service-connected right and/or left knee disability. The August 2015 VA examination report with addendums in September 2015 and November 2015 concluded that the Veteran's polyneuropathy of the lower extremities was less likely than not related to the Veteran's service or a service-connected disability.

The November 2015 addendum noted that polyneuropathy had a wide variety of causes ranging from common causes such as diabetes mellitus, alcohol abuse and HIV infection to more rare causes such as Charcot-Marie-Tooth disease. It was indicated that polyneuropathy often occurred as a side-effect of medication or as a manifestation of systemic disease. The rate of progression of the polyneuropathy, in conjunction with its character (axonal or demyelinating), could help identify its etiology.

The examiner next explained that the peripheral nerves were susceptible to a variety of toxic, inflammatory, hereditary, infectious, and parainfectious factors that could impair health and function leading to the clinical disorder of polyneuropathy. However, there were no simple rules to apply that can reliably distinguish the type of polyneuropathy (e.g., demyelinating versus axonal, chronic versus acute, sensory versus motor) produced by these disease categories.

The examiner next noted that the Veteran reported a history of having polyneuropathy in his legs due to a neck condition with surgery. It was noted that, immediately after knee replacement, there can be a complication of peroneal nerve compression that could lead to foot drop. However, the Veteran's symptoms started many years later and, therefore, his polyneuropathy was less likely than not caused by his bilateral knee disabilities. The VA examiner also noted that the Veteran's polyneuropathy of the lower extremities is not causally or etiologically related to his knee disability, and as such, any worsening of the polyneuropathy of the lower extremities is more likely due to the natural progression of his disease. 

Of note, a November 2015 letter from C.R.H., M.D., indicates that the Veteran's symptoms are likely related to a combination of cervical stenosis, cervical myelopathy, and lumbar stenosis, as well as neurogenic claudication.

In short, there is no probative evidence that the Veteran's polyneuropathy of the lower extremities is related to his service, or to his service-connected right and/or left knee disabilities. The Board points out that even the Veteran's treating providers did not find that his polyneuropathy of the lower extremities was caused or aggravated by his bilateral knee disability - including the total left knee replacement. Rather, the Veteran's treating providers attributed his polyneuropathy to his cervical stenosis and myelopathy, as well as his lumbar stenosis. In this regard, the Veteran's private treatment records reflect that the Veteran made no mention of his left knee disability in seeking treatment for his polyneuropathy of the bilateral lower extremities; he also did not attribute it to any event or injury during his service.

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994). As noted by the Federal Circuit, the Department must consider lay evidence, but may give it whatever weight it concludes the evidence is entitled to. Waters v. Shinseki, 601 F.3d 1274 (2010). 

The Board has considered the Veteran's statements. However, the Veteran's statements are insufficient to establish a nexus to his service or service-connected disability for his polyneuropathy of the lower extremities. See Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000) (a Veteran seeking disability benefits must establish the existence of a disability and a connection between such Veteran's service and the disability). As demonstrated by the opinion offered by the VA examiner, there are multiple potential causes of polyneuropathy with the current state of science being such that the precise etiology may be difficult to determine. Thus, the Board finds that the causation issue at hand is medically complex and beyond the competence of a lay person with no medical training and/or expertise. 

As such, the Board finds that the probative value of the Veteran's general lay assertions are outweighed by the specific, reasoned opinions provided by the VA examiner in the August 2015 VA examination report with addendums in September 2015 and November 2015, which are consistent with the clinical evidence of record. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning; threshold considerations are whether the person opining is suitably qualified and sufficiently informed). Additionally, the VA examiner possesses greater training and expertise than the Veteran in speaking to the medical question of diagnosis and etiology of polyneuropathy. 

For the foregoing reasons, the preponderance of the evidence is against the claim for service connection of polyneuropathy of the lower extremities. The benefit-of-the-doubt doctrine is therefore not for application, and the claim must be denied. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; see also Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009).

ORDER

Entitlement to service connection for polyneuropathy of the lower extremities is denied. 

____________________________________________
T. MAINELLI
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs